UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ROBERT STENGL, DANIEL WILL, RONALD F. KOSEWICZ, GARY K. COLLEY, LESLIE D. DIAZ, AMAYA JOHNSON, WILLIAM A. MCKINLEY, AND JOHN KARIPAS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>v.<br><br>L3HARRIS TECHNOLOGIES, INC., THE BOARD OF DIRECTORS OF L3HARRIS TECHNOLOGIES, INC., THE INVESTMENT COMMITTEE OF L3HARRIS TECHNOLOGIES, INC. AND JOHN DOES 1-30,<br><br>    Defendants. | Case No.:  6:22-cv-00572-PGB-LHP |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs' response to Defendants' motion to dismiss confirms the Amended Complaint should be dismissed. In fact, rather than respond to most of Defendants' arguments, Plaintiffs simply ignore them or address arguments Defendants never made. Plaintiffs' few arguments are addressed below.

<u>Documents Attached to the Motion.</u> Plaintiffs suggest in a footnote that this Court should not consider any of the documents attached to Defendants' motion to dismiss. *See* Doc. 49 at 7 n.6. But Plaintiffs do not explain why, do not respond to Defendants' argument that courts commonly consider the exact types of documents

1

submitted because they are central to the claims asserted, and do not address any of Defendants' cited cases. Plaintiffs' primary support for their argument is the decision in *Huang v. TriNet HR III, Inc.* ("*TriNet*")*,* but in that case defendants argued that documents could be considered there because they were part of an administrative record, not because they were central to the complaint. No. 20-cv-2293, 2022 WL 93571, at *3–4 (M.D. Fla. Jan. 10, 2022). As Defendants' cases confirm, *TriNet* is virtually alone in declining to consider Form 5500s and recordkeeping agreements on a motion to dismiss.

Impact of *TriNet.* Plaintiffs make much of the fact that Defendants did not cite *TriNet* and instead relied on *Matney v. Barrick Gold of North America, Inc.*, No. 20-cv-275, 2022 WL 1186532, at *1 n.2 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022), and *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022). But *TriNet* is not controlling authority, and unlike cases on which Defendants relied, it *pre-dates* the Supreme Court's decision in *Hughes v. Northwestern University*, 142 S. Ct. 737 (2022)*. TriNet* is distinguishable in almost every respect: it involved a different type of plan (multi-employer instead of single employer)*,* a different procedural posture (a post-administrative appeal), and different arguments. *See* 2022 WL 93571, at *1–4. After *TriNet* was decided, the Sixth Circuit twice rejected claims virtually identical to those here and the reasoning that underlies *TriNet. See Forman v. TriHealth, Inc.*, -- F.4th ----, No. 21-3977, 2022 WL 2708993, at *4–7 (6th Cir. July 13, 2022); *CommonSpirit*, 37 F.4th at 1164–70. While Plaintiffs suggest that *CommonSpirit*

goes "against the grain" of decisions, it is an appellate opinion, and therefore suggests *TriNet* may not be correctly decided.

I. **Plaintiffs have not stated a claim for breach of any fiduciary duty with respect to the Plan's investment options.**

<u>Share Class Claim.</u> Plaintiffs' response just ignores the fact that the Amended Complaint alleges that the Fidelity Freedom Funds offered a 20 basis point revenue credit. They also do not dispute Defendants' tables which show that, once the revenue credit is eliminated, the Plan's net fees were lower than the "less expensive" share class. They do not dispute that *Matney* performed this comparison and dismissed nearly identical claims.

Instead, Plaintiffs cite cases in which the existence of a credit was only first raised by a defendant, was not apparent from the complaint, or where the complaint alleged the actual recordkeeping fees collected exceeded the amount of revenue sharing. *See Kong v. Trader Joe's Co.*, No. 20-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022); *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022). Here, by contrast, the Complaint *alleges* that "the K class of the Fidelity Freedom target date funds pay 20 basis points in revenue sharing above the K6 class." Doc. 40 ¶ 155. Defendants have shown that the use of that revenue sharing made the Plan's share class less expensive than Plaintiffs' alternative, *see* Doc. 43 at 8–10, and have thus established an "obvious alternative explanation" for Defendants' conduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007).

CITs/Use of Passive Funds. Plaintiffs' argument about the use of CITs and actively-managed funds simply ignores the Sixth Circuit's two recent decisions rejecting these exact sort of claims. *See TriHealth*, 2022 WL 2708993, at *4; *CommonSpirit*, 37 F.4th at 1165–66. And Plaintiffs do not even attempt to respond to Defendants' arguments that CITs are not appropriate comparators because they are overseen by different agencies and subject to different regulatory requirements, among other distinctions. *See* Doc. 43 at 10–11. Even if they were appropriate comparators, Plaintiffs have no response to Defendants' tables showing that Plaintiffs' CITs were more expensive or comparable in cost to the Plan's funds. *See id.* at 11–12.

ICI Study. Plaintiffs also fail to respond to Defendants' tables and arguments about the Amended Complaint's use of the ICI Study. As other courts have noted in rejecting reliance on the ICI Study, while a court may "accept[] as true the ICI's findings as alleged, . . . [it] need not accept as true [Plaintiffs'] legal conclusion that the survey serves as a meaningful benchmark against which to weigh the investment committee's actions." *Riley v. Olin Corp.*, No. 21-cv-01328, 2022 WL 2208953, at *6 (E.D. Mo. June 21, 2022). And Plaintiffs cannot explain why their reliance on this study is any different from arguing that cheaper funds were available – the precise theory that an appellate court just rejected (twice). *See TriHealth*, 2022 WL 2708993, at *3 (citing *CommonSpirit*, 37 F.4th at 1167) ("[H]igher costs do not by themselves show 'deficient decision-making . . . .'").

<u>Modern Portfolio Theory.</u> With respect to their Modern Portfolio Theory ("MPT") claims, Plaintiffs' response does not cite a single case supporting the idea that fiduciaries must consider Plaintiffs' chosen MPT metrics in reviewing investment options. Neither do Plaintiffs respond to Defendants' argument that the MPT metrics do not clearly indicate that Plaintiffs' alternatives outperformed the Plan's options. *See* Doc. 43 at 18 n.4 ("The data presented often suggests a different 'winner' as between the Plan options and the proposed alternatives."). In any event, Plaintiffs cannot state a claim based solely on performance data from a three-year period. *See CommonSpirit*, 37 F.4th at 1166 ("Nor does a showing of imprudence come down to simply pointing to a fund with better performance.").

<u>Diversification Claim.</u> With respect to their claim for breach of the duty to diversify, Plaintiffs reliance on *Hughes* is misplaced. *Hughes* did not address a duty-to-diversify claim, but rather addressed whether a *particular* fund could be found prudent simply because the plan offered other prudent funds. *See* 142 S. Ct at 742. But when it comes to diversification, neither *Hughes* nor any other court has ever suggested that each individual option must be diversified. Instead, diversification is evaluated at the plan level, not the individual fund level. *See Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 195–96 (5th Cir. 2020), *cert. denied*, 690 S. Ct. 706 (2021); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009).[1]

---

[1] To the extent Plaintiffs argue that the Plan was undiversified because it did not offer "any meaningful large cap investment," Doc. 40 ¶ 144, this allegation does not support their duty-

## II. Plaintiffs have not stated a claim for breach of any fiduciary duty with respect to the Plan's recordkeeping fees.

Plaintiffs do not dispute any of the actual fees shown in the recordkeeping agreements, but argue that their claims should survive for three reasons, none of which has merit. First, Plaintiffs argue that "minor errors in calculation" do not defeat a recordkeeping claim. Doc. 49 at 21. But this is a straw man because Defendants never argued that there were any minor errors; they argued that actual recordkeeping fees shown in the recordkeeping agreements were both lower than the amounts alleged and within the range that the Amended Complaint alleges was prudent. *See* Doc. 43 at 21–23.

Second, Plaintiffs argue that "Defendants' challenge to Plaintiffs' choice of comparators" is a fact issue. Doc. 49 at 23. But that is a straw man too because Defendants did not challenge Plaintiffs' choice of comparators. Rather, Defendants argued that, even accepting the Amended Complaint's proposed range as accurate, Defendants fees were within that range. Doc. 43 at 22–23.

Third, Plaintiffs argue that their claim should survive because the true fees were "still above the figure of the low $20 range Plaintiff alleged was available to the Plan." Doc. 49 at 22. But this is a nonstarter because Defendants are not required to obtain

---

to-diversify claim. Plaintiffs cite no case law for the proposition that a plan must offer large-cap funds in order to be properly diversified, and courts have rejected similar claims. *See Smith v. Shoe Show, Inc.*, No. 20-cv-813, 2022 WL 583569, at *10 (M.D.N.C. Feb. 25, 2022) (dismissing a duty-to-diversify claim based on the allegation that a plan did not include sector-specific funds because ERISA does not mandate the inclusion of any particular type of fund).

6

the lowest possible fees, *Hecker v. Deere & Co.*, 569 F.3d 708, 710 (7th Cir. 2009), and this argument just ignores the Amended Complaint's own allegation that "well managed" plans paid between $21 and $34 in 2018. Doc. 40 ¶ 165. Plaintiffs cannot now reverse course and argue that plans in the Amended Complaint's chart that paid $34 were not well run. As the Sixth Circuit recently explained, the reason that some plans pay more than others is because they receive different services, which is why, to state a claim, a plaintiff has to allege that the fees were not justified by the services provided, not that they were simply higher than a tiny segment of other plans. *CommonSpirit*, 37 F.4th at 1169.

Dated: July 28, 2022                                        Respectfully submitted,

/s/ Mark B. Blocker

Thomas A. Zehnder
Florida Bar No.: 0063274
Dustin Mauser-Claassen
Florida Bar No.: 119289
KING, BLACKWELL, ZEHNDER
& WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
tzehnder@kbzwlaw.com
dmauser@kbzwlaw.com

Mark B. Blocker
Benjamin I. Friedman
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000

7

>Facsimile: (312) 853-7036
>mblocker@sidley.com
>benjamin.friedman@sidley.com
>
>*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on July 28, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>/s/ Thomas A. Zehnder
>Thomas A. Zehnder
>Florida Bar No. 0063274